**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kerry J. NAHOOM,
Defendant-Appellant.**

No. 85–3281.

United States Court of Appeals,
Eleventh Circuit.

June 17, 1986.

Nancy Little Hoffman, Ft. Lauderdale, Fla., for defendant-appellant.

Robert W. Merkle, U.S. Atty., Stephen J. Calvacca, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before HILL, Circuit Judge, HENDER-SON *, and BROWN **, Senior Circuit Judges.

HILL, Circuit Judge:

## FACTS

On December 20, 1984, appellant Kerry Nahoom was indicted by a federal grand jury on three counts. Count I charged Nahoom with conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged him with conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963. Count III charged appellant with conspiracy to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Nahoom pled not guilty to each count and was tried before a jury on March 7 and 8, 1985. The jury returned verdicts of guilty as to Counts I and II but acquitted Nahoom on Count III ("RICO" count). Nahoom appealed the convictions.

The following facts are relevant to our decision in this case. Nahoom is a former Assistant United States Attorney who at the time of the alleged acts operated his own private practice. Nahoom became acquainted with his alleged co-conspirators due to an unrelated large scale drug smuggling operation known as Operation Sunburn and a resulting investigation of that operation. Clifford Wentworth, who represented William Clyde Cobb, the alleged ringleader of Operation Sunburn, retained Nahoom with regard to the Operation Sunburn investigation. Cobb and Wentworth apparently continued to smuggle marijuana, though on a smaller scale, after Nahoom began his representation of Wentworth. The government alleges it is at this point that Nahoom became involved in the operation.

Wentworth testified at trial that Nahoom was aware that they were smuggling marijuana into this country and advised them to continue to do so. Both Wentworth and Cobb testified that Nahoom introduced Tom Brzosca to them to act as the pilot in the smaller drug smuggling operation. Brzosca testified that in late 1979 Nahoom approached him about flying illegal drugs into the country, that he agreed to do so, and that the understanding existed that Brzosca and Nahoom would receive $40,000 and $10,000 respectively from Cobb and Wentworth for each trip. Considerable evidence was introduced that Brzosca in fact conducted a number of these flights.

Cobb and Wentworth testified that part of Wentworth's responsibility was to hold and invest the millions of dollars in cash received from Operation Sunburn. Both men testified that Nahoom approached them on several occasions about investing these funds in the Orlando area. Wentworth testified that in the spring of 1980 Nahoom encouraged him to invest a portion of these proceeds in a real estate venture in Winter Park, Florida and that he and Cobb flew down to Winter Park to view the project. To effect this investment, Nahoom proposed to Wentworth a complicated scheme to introduce money into the country, including depositing the money into a noninterest bearing nominee Merrill Lynch account. None of the investments which Nahoom encouraged, including the Winter Park venture, were ever undertaken.

Appellant took the stand at trial and denied any involvement in any drug smuggling scheme, contending that his relationship with Wentworth was strictly that of attorney/client. On rebuttal, the government introduced evidence of previous money laundering activity by Nahoom. Specifically, the government presented the testimony of Sonny Wilson, who stated that in 1978 Nahoom assisted him in secreting ownership of a marina by having the marina purchased in the name of one David Sands, a Wilson associate. Pursuant to this scheme, Nahoom assisted Wilson in setting up a nominee account in Sands'

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

name, to which approximately $150,000 in funds were deposited to pay for improvements on the marina. Testimony of Charles Amos, a former broker with Merrill Lynch, corroborated Nahoom's involvement in the creation of this account and furnished further details regarding the scheme, noting that it was arranged so that each deposit into the nominee noninterest bearing account was for less than $10,000 and thus not subject to CTR reporting requirements.

Nahoom raises four principal issues on appeal. First, Nahoom contends that because he was acquitted on the RICO conspiracy count, and because the facts that formed the basis for the RICO count were the same as the facts underlying Counts I and II, the jury could not properly find him guilty of the latter counts. Next, Nahoom contends that the district court abused its discretion in permitting the government to present evidence of an extrinsic offense not charged in the indictment. Third, Nahoom argues that the district court abused its discretion in denying his motion for a mistrial based on the prosecutor's violation of the court's order not to elicit testimony regarding any witness' involvement in the Witness Protection Program. Last, Nahoom asserts that the court erred by failing to give a requested "absent witness instruction."

## DISCUSSION

### I. *Inconsistent Verdicts*

■ We first address appellant's contention that the acquittal on the RICO count mandated similar verdicts on the drug conspiracy counts. Although appellant's elab-

oration on this argument is somewhat confusing, we view it as principally an assertion that the acquittal on the RICO conspiracy count and the conviction on Counts I and II are inconsistent.[1] This argument is without merit. The RICO conspiracy count is not a lesser included offense within the Title 21 drug conspiracy charged in Counts I and II. The jury apparently found the underlying predicate Title 21 violations but did not sufficiently find all the additional elements necessary for a RICO conspiracy; enterprise, effect on interstate commerce, intent to participate in the affairs of the enterprise, etc. *See United States v. Bright*, 630 F.2d 804, 829 (5th Cir.1980). Moreover, federal law does not recognize inconsistent verdicts as a basis for relief if there exists sufficient evidence to support the guilty verdicts rendered. *United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir.1981).

### II. *Evidence of Extrinsic Offense*

Nahoom also objects to the government's introduction at trial of evidence of his previous participation in money laundering activities unrelated to the crimes charged in the indictment. Nahoom's indictment alleges as an overt act on the RICO conspiracy count his participation in money laundering activities related to the conspiracies to import and possess with intent to distribute marijuana. Nahoom categorically denied at trial involvement in any of the conspiracies charged in the indictment, and asserted that he neither engaged in any money laundering activity in his relationship with Wentworth nor had ever been involved in any illegal money laundering

---

1. Nahoom actually couches this argument in terms of collateral estoppel and double jeopardy. He contends (1) that collateral estoppel prevented his conviction on Counts I and II as all the facts necessary for convictions on these counts were established against the government by the verdict on the RICO conspiracy count and (2) that double jeopardy prevents the government from dividing the single conspiracy alleged here into three separate conspiracies which would give the same jury three opportunities to convict the defendant of the same conduct. There is obviously no collateral estoppel issue presented here because the verdicts as to all three charges were rendered in the same proceeding. Likewise, this case presented no double jeopardy problem because the crimes charged require proof of different elements. In addition, this court has held that prosecutions for importation and distribution conspiracies do not bar a subsequent prosecution for a RICO conspiracy based on the same conduct. *United States v. Boldin*, 772 F.2d 719, 729 (11th Cir. 1985), *modified*, 779 F.2d 618 (11th Cir.), *cert. denied sub nom.*, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986).

scheme. Nahoom contends that the evidence introduced regarding his alleged participation in such a scheme was improperly introduced as evidence of his bad character in violation of Fed.R.Evid. 404(b).

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit established a two-prong test for determining the admissibility of extrinsic offense evidence under Rule 404(b). Such evidence is admissible if it relates to an issue other than the defendant's character and the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Beechum*, 582 F.2d at 910–11. The government asserts that the extrinsic offense evidence was probative on the issue of whether Nahoom possessed the necessary intent. Nahoom argues that because he denied any involvement in the crimes charged against him, intent was not in issue. Therefore, the extrinsic offense evidence was not relevant to an issue other than his character. A defendant's plea of not guilty in a conspiracy case places his intent at issue, and intent remains at issue unless the defendant affirmatively removes it from the case. *United States v. Burke*, 738 F.2d 1225, 1229 (11th Cir.1984). Because Nahoom pled not guilty to the conspiracy charges, his intent was at issue in this case. Evidence that Nahoom had engaged in money laundering activity on a previous occasion was obviously probative on the question of whether Nahoom possessed the requisite intent to commit the crimes with which he was charged. The extrinsic offense evidence related to an issue other than appellant's character. As to the second *Beechum* prong, given the nature, similarity, and proximity of the collateral conduct to that conduct alleged in the indictment, the probative value of the evidence outweighed any undue prejudicial effect. Both prongs of the *Beechum* test thus were satisfied.

Nahoom next contends that the extrinsic offense is not relevant as there was an insufficient basis for the jury to find Nahoom committed the extrinsic offense.

A court need not be convinced that the defendant committed the extrinsic offense, nor is the government required to produce clear and convincing evidence of such acts. The court should allow introduction of the extrinsic offense evidence unless "the jury could not reasonably find the preliminary fact to exist." *Beechum*, 582 F.2d at 913. The testimony of Wilson and Amos was sufficient proof for the jury to find that the extrinsic offense occurred. The district court correctly determined that evidence regarding the extrinsic offense was relevant. The district court did not abuse its discretion in admitting the extrinsic offense evidence.

### III. *Prosecutorial Misconduct*

During the course of the trial the court granted appellant's motion *in limine* requiring the prosecution to instruct its witnesses not to refer to the fact that any potential government witness might be involved in the Witness Protection Program. The government apparently abided by the court's order until, during the course of the government's cross-examination of appellant, Nahoom described, in some detail and without prompting, threats allegedly made to Brenda Wentworth by government agents. Following this testimony the government conducted a limited cross-examination in which it asked Nahoom whether he was aware that Brenda Wentworth had been placed by the government in the Witness Protection Program. Nahoom moved for a mistrial, contending that the government's reference to the Witness Protection Program may have led the jury to erroneously believe that Nahoom was the source of the threats which prompted Ms. Wentworth to seek protection.

The grant or denial of a motion for mistrial is addressed to the sound discretion of the trial judge, and will be reversed only for an abuse of that discretion. *United States v. Burke*, 496 F.2d 373 (5th Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 229, 42 L.Ed.2d 182 (1974). At trial, the court noted the impropriety of the government's

question. The trial judge concluded, however, that the statement did not sufficiently prejudice Nahoom such that a mistrial was warranted. Even were we to assume that the mere propounding of that single question suggested to the jury that Nahoom was responsible for the threats to Wentworth, a review of the record indicates that this was the only such suggestion and any resulting error was harmless. Under the facts of the case, the trial court did not abuse its discretion in denying the motion for a mistrial.

### IV. *Absent Witness Instruction*

Nahoom's final contention of error concerns the court's refusal to give an "absent witness instruction." During trial, the government attempted to establish on cross-examination of Nahoom that he undertook to contact Brenda Wentworth in order to carry out a drug deal with her husband. Nahoom asserts that because Ms. Wentworth's involvement in the Witness Protection Program placed her within the power of the government to call as a witness, and because the government failed to do so, he was deprived of his only opportunity to corroborate his denial of any alleged contact with Ms. Wentworth for purposes of conducting a drug transaction. When a witness is peculiarly within the control of one party, and the witness' testimony would elucidate facts in issue, an instruction is appropriate regarding the permissible inference which the jury may draw from the party's failure to call the witness. *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir.1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). However, even assuming that Nahoom in fact could not call Brenda Wentworth as a witness, and that he was therefore entitled to an absent witness instruction, the absence of this single inference could not have affected the jury's verdict here; the error, if any, was harmless. *See Chapman*, 435 F.2d at 1248.

Appellant's convictions are AFFIRMED.