**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan Andres CARDENAS,**
**Defendant–Appellant.**

No. 88–4041.

United States Court of Appeals,
Eleventh Circuit.

March 8, 1990.

Rene A. Sotorrio, Miami, Fla., Jack Ross, Gainesville, Fla., for defendant-appellant.

Lyndia P. Barrett, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and YOUNG *, Senior District Judge.

FAY, Circuit Judge:

Appellant Cardenas was convicted of conspiring to possess with intent to distribute more than 500 grams of cocaine and of possessing with intent to distribute more than 500 grams of cocaine. Cardenas appeals his conviction claiming that the trial judge committed reversible error in admitting into evidence the testimony of two government witnesses who described appellant's prior use and distribution of cocaine. We hold that the testimony was admissible under Federal Rule of Evidence 404(b) to prove intent and under Federal Rule of Evidence 608(b) to contradict the material testimony of Cardenas. Accordingly we AFFIRM appellant's conviction.

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

## I. BACKGROUND

In November 1986, the Drug Enforcement Administration (DEA) began investigating narcotics transactions taking place in Gainesville, Florida. The DEA received information that an individual named Terry Lee Brown was dealing cocaine in Gainesville and set up a deal between an undercover agent and Brown for the sale of one kilogram of cocaine.

On November 19, 1986, the undercover agent showed Brown that he possessed the money to buy the cocaine. After seeing the money, Brown contacted his supplier, Martinez, to verify that the cocaine was available. Martinez then contacted his supplier, who was located in Miami, Florida. Martinez's supplier informed him that the cocaine was being delivered by a courier and was on its way to Gainesville. Martinez was to pick up the cocaine from the courier's hotel room.

The transaction took place late in the afternoon of November 19, 1986. The DEA agent met Brown and Martinez in a parking lot. Brown and Martinez brought the cocaine, but the DEA agent had stuffed shredded paper, instead of money, in a bag. After exchanging the bag for the cocaine, DEA agents arrested Brown. After fleeing the scene, and crashing his motorcycle into a DEA vehicle, Martinez was also arrested.

Subsequent to the arrest of Martinez and Brown, DEA agents checked hotel records to find the courier. Hotel records indicated that George Quintero was the only person who checked in during the time in question. A DEA agent called Quintero informing him that Martinez had been arrested, but that he knew where the money was located. The agent arranged for a meeting with Quintero. Quintero obliged, and agents arrested him when he arrived.

Quintero cooperated with the authorities in the investigation and revealed that the source of the cocaine in Miami was Juan Andres Cardenas. Quintero informed the DEA that Cardenas delivered the cocaine to him at a health club on November 18, 1986 and instructed him to transport the cocaine to Gainesville. Cardenas further directed Quintero to call him at a beeper number upon arriving in Gainesville. It was later discovered that the beeper number which Quintero called was the same number that Cardenas indicated was his home phone number on an application for membership in the health club. At trial, Quintero identified defendant as the Cardenas who provided him the cocaine to deliver.

Cardenas, on his way from Venezuela to California, was arrested in San Juan, Puerto Rico on March 25, 1988, after a computer check revealed that there was a federal warrant for his arrest. Cardenas had been indicted for conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 846 & 841(a)(1) (1982) and with possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). Cardenas pleaded not guilty and was convicted by a jury of both counts.

## II. DISCUSSION

The sole issue Cardenas raises on appeal is whether the trial court abused its discretion in admitting testimony which implicated Cardenas in prior drug dealings and prior drug usage. Cardenas contends that testimony from two of the government's witnesses, George Quintero and Thomas Moore, should have been excluded.

In the government's case-in-chief, the prosecutor introduced Quintero as a witness and asked Quintero whether he had used drugs with Cardenas. R4–115. Quintero responded affirmatively and counsel for defendant objected and moved for a mistrial on the ground that the testimony about prior drug use was irrelevant and moved for a mistrial. R4–115–16. The government responded that the testimony was admissible under Rule 404(b) to prove that Cardenas had knowledge of cocaine and intent to possess it. R4–116. The judge ruled in favor of the government on both the objection and the motion for a mistrial. R4–116.

Regarding the testimony of Thomas Moore, counsel for Cardenas filed a motion in limine before trial to preclude Moore from testifying about his drug dealings with Cardenas. The trial judge heard extensive arguments from both sides and withheld ruling on the admissibility of Moore's testimony until a proffer was made. After hearing the substance of Moore's testimony out of the presence of the jury, and after hearing more arguments, the trial judge ruled the testimony admissible under Rule 404(b). Accordingly, over vehement and recurring objections from defense counsel, the prosecutor elicited Moore's testimony regarding defendant's using and trafficking drugs:

Q. Did there come a time when you saw Mr. Cardenas in possession of cocaine?

A. Yes.

. . . .

Q. Did there come a time when you bought cocaine from Cardenas?

A. Yes.

Q. Tell the jury about that? How many times?

Mr. Sotorrio: Objection.

The Court: Overruled.

A. When Juan Andres moved in with me, I was in a drug—it was an outpatient drug rehabilitation program and I was trying to get off cocaine.

Once I realized that he did have the drugs, it was very hard for me to resist going to him and saying, you know, can I buy a jig from you.

It was shortly after that, I don't know, days or a week or whatever it was, I began at that time buying coke in small amounts from him, what we call one G's, or a gram.

And at that time, I was buying more and more.

. . . .

Q. During the time that Cardenas lived with you, you were buying all of your cocaine from him?

A. At that time, yes.

Q. And how long did he live with you?

A. Two and a half or three and a half months. I'm not sure of the dates when he moved in or he moved out.

Q. Over that time period that he lived with you, how much money did you pay him for cocaine?

A. I would say, it would be a fair guess to say that I probably spent somewhere from three to $5,000.

Some of that was traded for rent for the use of the cocaine.

Q. Did you ever see him distribute cocaine to anyone else?

A. Yes.

R5–368–72.

After Moore testified, the court gave a limiting instruction to the jury. The judge admonished the jury not to use the evidence of Cardenas' prior drug dealings as evidence that he committed the charged offense, but rather to use Moore's testimony in determining whether Cardenas had the requisite intent and knowledge to commit the crime. R6–399–400. At the close of all the evidence, the judge again charged the jury that the testimony regarding prior drug involvement was not to be considered as proof that Cardenas committed the charged offense. R7–700–01.

Appellant urges this court to reverse his conviction on the ground that the trial judge committed substantial and prejudicial error in admitting, under Rule 404(b), the testimony of Quintero and Moore. Appellant argues that the testimony was inadmissible because the sole issue for consideration by the jury was identity, and the prior acts about which Moore and Quintero testified were too remote and dissimilar to render the evidence admissible to show identity under Rule 404(b).

**A. Admissibility Pursuant to Fed.R. Evid. 404(b)**

Appellant's argument that the extrinsic acts were inadmissible rests primarily on his contention that knowledge and intent were not at issue in the case, and that the sole issue was the identity of the culprit.[1]

---

**1.** Counsel for Cardenas states in his brief that the government conceded this point at trial.

Appellant's Brief at 21. We believe counsel has misinterpreted the record. The government ar-

If this contention is correct, the government would be required to show that Cardenas' prior act was so similar to the charged offense as to mark it as the handiwork of the accused. *United States v. Myers*, 550 F.2d 1036, 1045–46 (5th Cir. 1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).[2] "A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." *Id.* at 1045.

■ However, appellant's characterization of this case as one dealing only with the issue of identity is mistaken. One factor to consider in determining whether the evidence of prior acts is admissible to prove intent is whether it appeared at the commencement of trial that intent would be a contested issue. *United States v. Mitchell*, 666 F.2d 1385 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982); *United States v. Beechum*, 582 F.2d 898, 915–16 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). In this case, defendant's counsel did nothing before trial to indicate that the government would be relieved of proving intent if it was established that defendant was the same Cardenas who was involved in the Gainesville drug transaction. In fact, the prosecutor stated that she anticipated Cardenas would

deny his intent to be involved in the charged offense. R4–8.[3] Consequently, in preparing its case for trial, the government was faced with the difficult burden of proving defendant's intent to conspire and his intent to possess and distribute drugs.

■ Further, when a defendant charged with conspiracy enters a not guilty plea, he makes intent a material issue in the case and imposes a substantial burden on the government. *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir.1980). Thus, the government may introduce extrinsic offenses which qualify under 404(b) to prove defendant's state of mind, unless defendant takes affirmative steps to remove the issue of intent from the case. *Id.; United States v. Russo*, 717 F.2d 545, 552 (11th Cir.1983) (per curiam).[4] Again, there is no indication in the record that defendant would have conceded his intent to participate in the Gainesville transaction if the government proved that he was involved. Therefore, we will look to case law dealing with admissibility of extrinsic acts to prove a defendant's state of mind in determining whether the trial court committed reversible error in admitting the evidence of defendant's prior drug dealings.

The trial court has broad discretion to decide questions of admissibility of evidence, and the appellate court will disturb a ruling only if the trial court abused its discretion. *United States v. Hicks*, 798 F.2d 446, 451 (11th Cir.1986), *cert. denied*,

gued that the evidence was admissible to show both identity and intent. R4–8–9. The trial judge apparently rejected the government's use of the evidence to show identity, but ruled in the government's favor regarding its use of prior act evidence to show intent and knowledge.

2. The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3. The prosecutor's suspicion that Cardenas would deny his intent to become an actor in the cocaine transaction was not unfounded. Cardenas has been tried twice for his participation in the scheme, the first trial resulting in a hung jury. The same district judge presided over both proceedings, and both attorneys were the same. *See* R4–8, 24–26. The prosecutor stated

that during the first trial, defendant testified that he had never been involved in drugs and had no intent to be involved. R4–8. Counsel for defendant never rebutted the prosecutor's allegations. Thus, the prosecutor had reason to believe that defendant would testify again and that intent would be raised as an issue in the second trial.

4. In *Roberts*, the court held that defense counsel's indication that he would not actively contest the issue of defendant's intent to be involved in the conspiracy was insufficient to preclude admission of extrinsic acts to prove state of mind. The present facts present an even stronger case for finding that intent was at issue. In this case, defense counsel did not even mention that he would refrain from contesting the intent issue. Thus, clearly the government was left with the burden of proving Cardenas' intent to commit the charged offense.

479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987). In the case before us, the trial court admitted evidence of prior acts under Rule 404(b) to show intent and knowledge. Evidence of prior offenses to prove intent is admissible if two requirements are fulfilled. "First, it must be 'determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense....'" *United States v. Barnes,* 586 F.2d 1052, 1057 (5th Cir.1978) (quoting *Beechum,* 582 F.2d at 913). Second, the court must weigh the probative value of the evidence against the unfair prejudice the defendant may sustain by its admission. *Barnes,* 586 F.2d at 1057; *Beechum,* 582 F.2d at 913–16.

■ After careful review of the record, we find that the first prong of the test for admissibility of prior offenses to prove intent was satisfied. Quintero's testimony revealed that he and Cardenas had used drugs before. He testified that a few times when they went out, they would carry a few grams of cocaine and use it. R4–116. Moore's testimony, which defense counsel most strongly opposed, disclosed that Cardenas, while living in Moore's residence in Seattle, Washington, sold Moore between $3,000 and $5,000 worth of cocaine. Moore also testified that Cardenas, on several occasions, embarked on trips to Florida and would return with large amounts of cocaine. R5–373. We believe that the trial court was correct in finding that these prior offenses and the charged offense require similar intent. The events to which Quintero and Moore testified depicted Cardenas possessing and distributing cocaine, the same substance giving rise to the indictment. Likewise, the state of mind required of defendant for transporting cocaine from Miami to Seattle closely approximates the intent required for his participation in a plan to transport cocaine from Miami to Gainesville. This evidence indicates not only that Cardenas was aware of the substance involved, but also that he had the experience necessary to effectuate the plan.

Additionally, the government's proof of these prior incidents through the testimony of the two witnesses was sufficient for the jury to conclude that the events actually occurred. "[T]he task for the trial judge is to determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense." *Beechum,* 582 F.2d at 913. The only evidence which called into question the veracity of Quintero and Moore was Cardenas' own self-serving statements that he had not recently used cocaine and had never sold cocaine. We believe that the trial court was wise to leave the resolution of these disparities to the fact finder. We also take note of defense counsel's statement during argument regarding the admission of Moore's testimony, "I am not denying that the Mr. Cardenas that is alleged to have been suspected of being involved in cocaine activities in Washington '83, is the same one that's being charged here." R4–10–11. There is no question that sufficient evidence of defendant's prior possession and distribution of cocaine existed.

■ The second step in analyzing prior offense evidence is to determine whether the probative value of the extrinsic evidence is substantially outweighed by the danger of unfair prejudice. *Beechum,* 582 F.2d at 913. An important factor in making such a determination is the posture of the case. "If at the commencement of trial it is not certain that the defendant will contest the issue of intent, the judge is in a poor position to weigh the probative value against the prejudice of the evidence because he cannot foresee the nature or extent of either the Government's case or the defendant's response." *Id.* at 915. As discussed above, defendant took no affirmative steps to indicate that lack of intent would not be a defense in the case.

■ Further, the court should consider the strength of the government's case on the intent issue absent the proffered evidence of prior bad acts. *See Id.* at 914. We find that the government did not have powerful proof besides the testimony of Moore and Quintero that Cardenas intend-

ed to become an actor in the conspiracy to distribute cocaine in Gainesville. The only other direct evidence of defendant's intent was Quintero's testimony that defendant was the Miami source of the cocaine, and Quintero is a convicted felon whose credibility was challenged by defense counsel. *See, e.g., United States v. Hicks,* 798 F.2d 446, 451–52 (11th Cir.1986) (court found that government did not have exceptionally strong case on intent where key government witness could be impeached on basis of criminal history), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987). In light of defendant's adamant denial of any connection with the Gainesville transaction, and the lack of any overwhelmingly credible sources to testify as to his intent to participate in the deal, the government's need to introduce the testimony could not have been questioned.

■ Finally, the court should consider the dissimilarities between the charged and prior offenses and their temporal remoteness. *Beechum,* 582 F.2d at 915. "[T]he probative value of the extrinsic offense correlates positively with its likeness to the offense charged." *Id.* (footnote omitted). Likewise, the more time separating the charged and prior offense, the less probative value can be assigned the extrinsic evidence. *Id.* We conclude that the trial court did not abuse its discretion in finding that the prejudice resulting from admission of the evidence of defendant's prior drug activity did not substantially outweigh its probative value. Although the dissimilarities include differing amounts of cocaine and different locations, and one of the prior offenses occurred more than three years before Cardenas was charged, we believe the trial court properly exercised its discretion in admitting the evidence. *See, e.g., United States v. Hitsman,* 604 F.2d 443 (5th Cir.1979) (extrinsic act evidence admissible even though narcotics were different and prior offense occurred two to three years before charged offense). "Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *Id.* at 448.

Moreover, the judge diminished the prejudicial impact of the evidence by properly instructing the jury for what purpose it was to be used. After Moore testified, the judge admonished the jury that the evidence of defendant's cocaine distribution in Seattle was to be considered only in drawing inferences as to his state of mind:

In other words, testimony that a defendant may have committed at some other time an act similar to the act or acts alleged in the indictment in this case, may not be considered by the jury in determining whether the accused, in fact, committed any act alleged in this indictment.

. . . .

But on the other hand, if the jury should find beyond a reasonable doubt from the other evidence in the case, that the accused did the act as charged in this indictment, then the jury may consider evidence as to some other act of a similar or like nature on the part of the accused, in determining the state of mind or the intent, with regard to the ability described in this indictment.

R6–399–400.

Additionally, included in the court's instructions to the jury at the close of all the evidence was a cautionary charge:

Evidence that an act was done at one time or on one occasion, is not any evidence or proof, whatever, that a similar act in relation to those alleged in the indictment, or that an act was done at another time or on one occasion is not any evidence or proof, whatever, that a similar act was done at another time on another occasion.

. . . .

If the jury should find beyond a reasonable doubt from other evidence in the case, that the accused did the act charged in the particular count under deliberation, then the jury may consider evidence as to an alleged act of a like nature, in determining the state of mind or the intent with which the accused did the act charged in the particular count of the indictment.

R7–700–01. These admonishments helped to allay the prejudicial impact of the evidence of prior extrinsic acts by informing the jury of the limited purpose for which it could be used. *See Beechum*, 582 F.2d at 917. Thus, we cannot conclude that the trial judge's admission of the evidence of defendant's previous connections with cocaine was reversible error.

### B. Admissibility as Material Contradiction

█ Additionally, we hold that the testimony of Moore and Quintero was admissible for the purpose of contradicting the material testimony of defendant Cardenas. Although the trial court admitted the testimony under Rule 404(b), this court may still determine if it was admissible on other grounds. "If the admission was proper on any ground, it is of no consequence that the court might have given the wrong reason for its admission." *Navajo Freight Lines, Inc. v. Mahaffy*, 174 F.2d 305, 307 (10th Cir.1949); *see also Iselin v. C.W. Hunter Co.*, 173 F.2d 388, 390 (5th Cir. 1949); *McLain v. Lance*, 146 F.2d 341, 347 (5th Cir.1944), *cert. denied*, 325 U.S. 855, 65 S.Ct. 1183, 89 L.Ed. 1976 (1945) (if appellate court finds other grounds to support judgment, trial court will not be reversed even if the reasons assigned by the lower court were erroneous).

During direct examination by his counsel, defendant Cardenas stated that he had never sold or given cocaine to Moore, his former roommate. R6–546. Further, on cross-examination, Cardenas stated that he had not used cocaine since he was 20 or 21 years old and denied ever selling it. R6–549. Conversely, Quintero testified that he had used cocaine with Cardenas[5], R4–116, and Moore testified that he not only used cocaine with Cardenas, but that Cardenas had sold him between $3,000 and $5,000 worth of cocaine while they were roommates and distributed it to others as well. R5–370–73.[6]

Fed.R.Evid. 608(b) provides, in pertinent part:

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.

This rule prohibits the use of extrinsic evidence of misconduct to impeach the general credibility of a witness. *United States v. Cousins*, 842 F.2d 1245, 1249 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 139, 102 L.Ed.2d 111 (1988). However, "Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." *United States v. Opager*, 589 F.2d 799, 803 (5th Cir.1979).

---

**5.** Quintero testified that he met Cardenas only five or six months before they were arrested. R4–172. Since the arrest occurred in November 1986, and Cardenas was born on June 11, 1956, Quintero could not have been referring to the time period for which Cardenas admitted using drugs—when Cardenas was 20 or 21.

**6.** The testimony of Quintero and Moore preceded the testimony of Cardenas. Consequently, the contradictory effect of such evidence could have been only anticipated at the trial level. This court, however, has the luxury of reviewing a well-developed and complete record. Accordingly, it is within the province of this court to determine if the evidence was admissible under Rule 608(b) as a material contradiction, notwithstanding the order of the testimony. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2nd Cir.1978).

We do not believe the consequences of such a rule to be unduly prejudicial. If counsel for defendant is nearly certain that the testimony of a government's witness is inadmissible on the grounds proffered by the trial court, she can refrain from calling defendant as a witness. In such a case, there will be no contradictory testimony, and counsel can urge reversal at the appellate level on the ground that the trial court improperly admitted the evidence. Conversely, if counsel for defendant is merely hypothesizing that the testimony of the government's witness is inadmissible on the grounds proffered by the trial court, then the defense can present its case, including the contradictory testimony, and make a stronger case for the jury. However, upon review, the appellate court may consider not only whether the testimony was admissible on the grounds stated by the trial court, but also whether the evidence was admissible as a material contradiction, albeit the contradictory evidence was admitted before the defendant testified.

Evidence of specific misconduct which contradicts a witness' testimony as to a material issue is admissible in spite of, rather than because of, its general impeachment value. *Cousins*, 842 F.2d at 1245.

In this case, the evidence of defendant's prior involvement in the use and dealing of drugs related to the most important issue in this case—whether defendant knowingly and wilfully supplied cocaine for the Gainesville transaction. We believe that *Cousins* is pertinent. In *Cousins*, defendant, who was charged with conspiring to import cocaine, testified that he was not a cocaine user, had always opposed the use of drugs, and moved from Ft. Lauderdale, Florida, to Gainesville, Florida, in an effort to reduce his children's exposure to drugs. The government introduced the contradictory testimony of two witnesses who stated that defendant had used cocaine since moving from Ft. Lauderdale to Gainesville. The court held that *Cousins* made his true attitude toward illegal drugs a material issue because *Cousins'* anti-drug statements provided the jury with a basis upon which to acquit him of the conspiracy charge; therefore, the evidence of his drug use was admissible.

Similarly, we conclude that Cardenas' involvement with drugs was rendered a material issue insofar as Cardenas testified that he had never sold cocaine and had not used it in many years. From this testimony, the jury could have concluded that defendant could not have been a knowing and willful participant in the conspiracy and could not have intended to possess and distribute cocaine. Thus, just as in *Cousins*, defendant introduced evidence tending to show his innocence regarding drugs, thereby making his true involvement with drugs a material issue.

We do not believe that Rule 608(b) operates to exclude testimony such as this. Material relevant evidence, such as that presented by the government, which contradicts other material evidence does not tend to focus the jury's attention on an unrelated collateral matter, so as to confuse the jury and needlessly expend valuable time. Rather, such evidence aids the jury in determining whether a defendant actually and intentionally involved himself in the charged misconduct; its impeaching effect is merely ancillary. Thus, viewing the record as a whole, we hold the evidence of defendant's prior cocaine use and distribution was admissible under Rule 608(b) to contradict his material testimony.

## III. CONCLUSION

We hold that the evidence of appellant's previous use and distribution of cocaine was admissible under Federal Rule of Evidence 404(b) to prove that he had the requisite intent to become a willful and active participant in the Gainesville cocaine transaction and under Federal Rule of Evidence 608(b) to contradict appellant's material testimony. Accordingly, we AFFIRM appellant's conviction.

GEORGE C. YOUNG, Senior District Judge, dissenting:

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit established a two-pronged test for determining the admissibility of extrinsic offense evidence under Rule 404(b).[1] Such evidence is admissible if it relates to an issue other than the defendant's character and if the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Beechum*, 582 F.2d at 910–11.

As the majority holds, under the current law of this Circuit, intent is at issue in virtually every case in which a defendant pleads not guilty to a conspiracy charge, as long as the defendant does not take an affirmative step, such as stipulation, toward removing intent as an issue. *See, e.g., United States v. Nahoom*, 791 F.2d 841 (11th Cir.1986) (rejecting argument that, because defendant denied any involvement in the crimes charged against him,

---

**1.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

intent was not in issue); *United States v. Burke*, 738 F.2d 1225 (11th Cir.1984) (in conspiracy case, defendant's not guilty plea places intent at issue unless defendant takes affirmative steps to remove it).

Pursuant to this rule, the majority apparently adopts the view that when a defendant pleads not guilty to a conspiracy charge, evidence of extrinsic acts are admissible to prove intent even though the conspiracy charge is coupled with a charge of the substantive act. This view permits admission of extrinsic act evidence despite the fact that proof of the substantive act necessarily carries with it proof of intent, unless the probative value of the evidence is substantially outweighed by its prejudicial effect. This ignores "the distinction between defense theories that the defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly, with only the latter truly raising a disputed issue of intent." [2] *United States v. Colon*, 880 F.2d 650, 657 (2d Cir.1989). I believe that Eleventh Circuit precedent as set forth in *Nahoom* applies when only conspiracy is charged.

Furthermore, I would find that the trial court abused its discretion in finding that the probative value of this testimony was not substantially outweighed by undue prejudice. The probative value of extrinsic evidence is readily apparent when the issue of intent dominates the case. *United States v. Miller*, 883 F.2d 1540, 1545 (11th Cir.1989). Such evidence "is relevant because it lessens the likelihood that the defendant committed the charged offense with innocent intent." *United States v. Beechum*, 582 F.2d at 913.[3]

In the instant case, however, the government's case hinged on the identity of the cocaine supplier, not intent. Before the jury could consider evidence of the prior extrinsic acts, it had to find that Cardenas had committed the charged offenses. As the majority notes, the government had substantially less than an airtight case on the identity of the supplier. Martinez, the person who arranged with a source in Miami to have the kilogram of cocaine delivered to Gainesville, testified that he had met his source, known to him as "Juan Andres," approximately four times, but that he had never met the Defendant, Juan Andres Cardenas, until both men were in jail awaiting proceedings in this case. Government witness Quintero was the only witness whose testimony connected Cardenas with the transaction at issue. Quintero, the courier who delivered the cocaine from Miami, had retracted his statement implicating Cardenas prior to trial, then decided to stand by his original story.[4] I find it likely that the jury considered Moore's testimony concerning Cardenas' earlier sale of cocaine to establish that Cardenas was the person who had supplied the cocaine in the transaction giving rise to the instant case, notwithstanding the district court's cautionary instructions to the jury.

I note that several other factors diminish the probative value of the extrinsic evidence at issue here and increase its potential for undue prejudice. The remoteness of time—approximately three years—between the transaction giving rise to the charged offenses and the prior cocaine sales testified to by Moore deprive the prior acts of relevance which was not outweighed by prejudice. "The effect of the remoteness of time on the admissibility of the extrinsic evidence depends in part on the similarity between the offenses." *Mil-*

---

**2.** If a jury found that Cardenas committed the acts charged, intent would be implicit in such finding. This is distinguishable, for example, from a case against a person charged with passing a counterfeit note. In such a case, intent would be a central issue justifying evidence of extrinsic acts of passing other counterfeit notes on other occasions.

**3.** *Compare Miller*, 883 F.2d at 1546 (although intent was an issue, the key issue was the identi-

ty of the drug supplier, and trial court abused discretion in admitting extrinsic drug transaction evidence) *with United States v. Bennett*, 848 F.2d 1134, 1137 (11th Cir.1988) ("intent became the central issue" and 404(b) evidence was properly admitted given defense that defendants pulled alongside a drug-laden boat simply to see if anyone on board was injured).

**4.** Quintero testified that he had changed his story after he had received a threatening letter.

*ler*, 883 F.2d at 1545. Had evidence been introduced to show that the transactions were similar, this three-year lapse might not achieve the same significance. However, there was no testimony indicating that the manner of distribution was similar; for example, Moore did not testify that Cardenas utilized a courier to deliver cocaine to his customers. I find that the only similarity between the extrinsic acts testified to by Moore and the transaction at issue was the type of drug involved.

As an alternate ground for the admission of the challenged evidence, the majority holds that the testimony of Moore was admissible for the purpose of contradicting the material testimony of Cardenas. In so holding, the majority relies on *United States v. Cousins*, 842 F.2d 1245 (11th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 139, 102 L.Ed.2d 111 (1988).

*Cousins* is inapposite. In that case, the defendant, Cousins, who was charged with conspiracy to import cocaine, took the stand and "made sweeping assertions that he was opposed to drugs" and that he had moved his children from Fort Lauderdale to Gainesville in an effort to reduce their exposure to drugs. *Id.* at 1249. In rebuttal, the government was permitted to introduce the testimony of two witnesses who stated that Cousins had used cocaine since moving to Gainesville. On appeal, this Court held that Cousins "made his true attitude toward illegal drugs a material issue" because his "anti-drug statements provided the jury with a basis upon which to acquit him of the conspiracy charge." *Id.*

In the instant case, the prosecution, not the defendant, injected into the case the issue of the defendant's prior involvement with drugs. Cardenas *subsequently* testified that he had not used cocaine since he was 20 or 21 years of age, and that he had never sold cocaine. Thus, it cannot be said that Cardenas "made his true attitude to-

ward illegal drugs a material issue" in this case.[5]

Finally, I concur with the majority's opinion that Quintero's testimony that he and Cardenas used cocaine together was admissible. I would find, however, that this testimony was admissible because it was "inextricably intertwined" with Quintero's account of the circumstances surrounding the offenses for which Cardenas was indicted. Rule 404(b), therefore, does not apply to this testimony. *United States v. Foster*, 889 F.2d 1049 (11th Cir.1989).

For the reasons expressed, I would find that the district court abused its discretion in admitting Moore's testimony concerning Cardenas' prior sale of cocaine. Because this error may have affected the outcome of Cardenas' trial, I would reverse and remand for a new trial.

---

**5.** As the Second Circuit Court of Appeals stated recently with respect to the identical issue: "The problem is that by the time [the defendant] 'opened the door,' the proverbial horses had already left the barn." *United States v. Colon*, 880 F.2d 650, 661 (2d Cir.1989). The Second Circuit noted that the better practice is for the prosecution to defer the presentation of similar act evidence until the conclusion of the defendant's case.