**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Patrick COUSINS, Defendant–Appellant.**

**No. 87–3065.**

United States Court of Appeals, Eleventh Circuit.

April 19, 1988.

---

W. Dexter Douglass, Douglass, Cooper & Coppins, Tallahassee, Fla., Lamar Winegart, III, Edward M. Booth, Sr., Booth & Arnold, P.A., Jacksonville, Fla., for defendant-appellant.

Paul Alan Sprowls, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

\* Honorable Howard T. Markey, Chief U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Cousins was convicted of one count of conspiracy to import cocaine, in violation of 21 U.S.C. sec. 963, and three counts of income tax evasion, in violation of 26 U.S.C. sec. 7201.

2. In his brief, Cousins raises four additional claims on appeal. After reviewing these claims, we conclude that they are without merit.

3. Precisely what was said to the jurors is unclear from the record. When asked by the trial judge what had happened, one of the jurors responded:

We was coming up in the elevator after lunch. A young boy that has been in the audience come up with us and he was asking several

Before HATCHETT and EDMONDSON, Circuit Judges, and MARKEY \*, Chief Circuit Judge.

EDMONDSON, Circuit Judge:

William P. Cousins was convicted of conspiracy to import cocaine and income tax evasion.[1] Among other things, Cousins contends that reversible error was committed during his trial when: 1) the district court denied his motion for a mistrial after a local newspaper reported that a member of Cousins' family contacted members of the jury; and 2) rebuttal testimony concerning Cousins' prior drug use was admitted over his objection. We affirm the convictions.[2]

During the prosecution's case-in-chief, the jury informed the trial judge that a person had approached several jurors in an elevator outside the courtroom and had begun asking questions, such as, "He [referring to Cousins] is guilty, isn't he," or words to that effect.[3] The jurors then explained that they had told the speaker that they were not supposed to discuss the trial; but the person continued to ask questions until the jurors walked away. The trial judge asked whether the person had identified himself in "any manner, whatsoever as to who he was or if he had any relationship to this case whatsoever?" The jury spokesman responded, "No."[4]

questions about the trial. We told him we couldn't talk about it. He kept persisting. he said, 'he is guilty, isn't he' or 'is he guilty,' or 'it is over with, they don't have any more.' Just statements like that.

4. In addition, the trial judge subsequently asked the jurors the following questions:
THE COURT: I would like to ask the entire panel something.
The experience as you have told me—and it is proper that you all tell me—I have asked you to do it and I thank you. Has this incident created any problems in your mind that would prevent you from putting that aside and proceeding with this case basing your decision only upon the evidence and the law and disregard what was said to you or attempted to be said? Does anyone have any problem?

Cousins' attorney requested a bench conference and informed the district court that the person who approached the jury may have been Cousins' eighteen-year old nephew. Defense counsel also expressed concern that the jurors might react unfavorably if they believed that Cousins had arranged the incident in order to obtain a mistrial. After a brief recess, Cousins stated he wished additional time to consider whether he would move for a mistrial.

After the district court discussed with counsel how best to determine whether any jurors were prejudiced by the incident, the following questions were asked of the jurors:

THE COURT: Do any of you at this time, feel that the incident you have described and told us in open court was prompted or instigated by either the government or the defendant? Any of you feel that way?

JURY COLLECTIVELY: No.

THE COURT: Secondly, will the incident in any manner enter into or affect your consideration of the merits of this case?

JURY COLLECTIVELY: No.

THE COURT: Thank you.

Satisfied with these responses, the district court permitted the trial to proceed. Prior to the evening recess, the jurors were instructed "not to discuss this case or anything about this case amongst yourselves or with anyone else. Please do not read, listen to, or watch any news accounts."

The next morning Cousins moved for a mistrial based upon the previous day's events. Cousins also expressed concern over a report on the jury-encounter incident appearing in that morning's local newspaper; the newspaper attributed the remarks to Cousins' nephew. Defense counsel, however, requested no poll of the jurors about whether they had seen the article. The district court, on the basis of the answers the jurors previously provided, denied a mistrial. Cousins contends that the district court erred when it denied his motion for a mistrial.

■ Preliminarily, we note that the decision to grant a mistrial based upon allegations that a jury has been unfairly prejudiced by exposure to extraneous information or outside influences is largely within the discretion of the district court and will not be reversed absent a showing that the trial judge abused his discretion. *United States v. Khoury*, 539 F.2d 441, 443 (5th Cir.1976).[5] Moreover, when a defendant makes a "colorable showing" that jurors have been exposed to extrinsic influences, the district court,

in the exercise of its discretion, must make sufficient inquiries or conduct a hearing to determine whether the influence was prejudicial. However, there is no *per se* rule requiring an inquiry in every instance. The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. In other words, there must be something more than mere speculation.

*United States v. Barshov*, 733 F.2d 842, 851 (11th Cir.1984) (citations omitted); *Khoury*, 539 F.2d at 443 (district court's "discretion extends to the type of investigation required" to ascertain whether jury is prejudiced); *see also United States v. Ayarza–Garcia*, 819 F.2d 1043, 1051 (11th Cir.1987) ("The trial court has broad discretion as to how to proceed when confronted with an allegation of jury misconduct, including discretion with regard to the initial decision as to whether to interrogate jurors.").

■ Cousins has failed to demonstrate that any of the jurors were aware that Cousins' nephew was involved in the inci-

THE JURY COLLECTIVELY: [Negative Responses].
THE COURT: Is there anyone at all, now, that thinks that would influence them one way or the other in this case?
THE JURY: [No Response].

5. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

dent.[6] When questioned by the district court on the day of the contact, the jurors denied any knowledge of the person's identity. The jurors also indicated that the incident would not affect their consideration of the merits of the case.

In this case, on the evening prior to the appearance of the challenged newspaper article, the district court specifically instructed the jury not to "read, listen or watch" any news accounts pertaining to the trial. Cf. United States v. Herring, 568 F.2d 1099, 1105 (5th Cir.1978) (reversing conviction where judges' previous instructions concerning trial publicity were inadequate). In addition, the trial transcript reflects that throughout the course of Cousins' trial, the district court admonished the jury not to read any newspaper account of the case. Nowhere does the record indicate that the jury failed to heed these instructions. We will, therefore, presume that the jurors followed the district court's instructions and did not read the newspaper article. See generally United States v. Phelps, 733 F.2d 1464, 1473 (11th Cir.1984) ("The law presumes that the jury will follow the court's instructions...."). "Because no juror read the article, its publication could not have prejudiced [Cousins]." See Khoury, 539 F.2d at 442; see also United States v. Barshov, 733 F.2d 842, 851–52 (11th Cir.1984) (post-trial motion to interview jurors properly denied because district court "presumed that jurors followed the court's oft-repeated instructions not to discuss the case" even though a juror's son—who attended every day of the trial and overheard discussions occurring outside the jury's presence, who talked to the prosecutor and defense counsel about the case, and who even attempted to discuss the case with one of the defendants—was seen talking to jurors during recesses).

Cousins has presented no colorable showing that either the jury-encounter incident or the newspaper's account thereof "impugned in any way the integrity of the trial process." Barshov, 733 F.2d at 852. Consequently, the district court did not abuse its discretion in denying Cousins' motion for a mistrial. Nor was the district court obligated to ask the jurors more questions.

Cousins contends that the district court improperly admitted extrinsic evidence of his use of drugs. During the presentation of Cousins' defense, he made a motion in limine to prohibit the prosecution from cross-examining him or any character witness about his use of marijuana and cocaine. After this motion was denied, Cousins testified at length about his successful business career, prior military service and various civic activities. In response to questions asked by Cousins' attorney about previous drug use, Cousins testified:

Let me clarify 'use.' I never was a user. I experimented with it. I have never ever in my life seen cocaine or marijuana, other than on television, up until 1978, when I went to Fort Lauderdale. And I did get the opportunity to attend many parties, social functions, that were attended by people like doctors and lawyers and people in very high positions in the community. And it seems like drugs were just socially accepted and were done as an everyday life type situation. I didn't—I didn't agree with it, and I have always been an anti-drug person. And because of that and the exposure to our children, we moved [from Ft. Lauderdale to Gainesville].

In addition, on cross-examination, the prosecution referred to this testimony when Cousins was asked:

PROSECUTION: ... Other than your experience or your experimentation with cocaine at one time, several years ago, is it your testimony that you have never used it or been involved in any smuggling of marijuana or cocaine?

COUSINS: That's exactly what I testified to, and it's the truth.

Thus, Cousins' testimony portrayed himself to the jury not only as a law-abiding, hard-

**6.** We note the district judge initially stated that the jurors had been contacted by an "individual who they thought was a part of Mr. Cousins's family." Still, when subsequently questioned about this, the jurors expressly denied this fact. Consequently, for the reasons stated in the text of the opinion, we assume that the jurors answered truthfully.

working business and family man, but also as someone vehemently and particularly opposed to illegal drugs.

During the government's rebuttal, two witnesses were called to refute Cousins' statements concerning his anti-drug sentiments and prior drug use. Both witnesses testified that Cousins had used cocaine since moving from Ft. Lauderdale to Gainesville, two years after the conclusion of the alleged conspiracy charged in count one of his indictment. Cousins objected to this testimony as an impermissible form of impeachment prohibited by Rule 608(b) of the Federal Rules of Evidence.

■ Rule 608(b) provides, in part, that "[s]pecific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence." This rule prohibits a party from introducing extrinsic evidence of specific instances of misconduct in order to impeach the general credibility of a witness. Still, "evidence may be admitted to prove or disprove material facts in a case, even though a previous witness has testified to the contrary." *United States v. DiMatteo*, 716 F.2d 1361, 1366 (11th Cir.1983). Evidence relevant to a material issue is not rendered inadmissible because it also happens to include references to specific instances of misconduct of a witness. *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir.1987). Thus, extrinsic evidence is admissible where it disproves "a specific fact material to the defendant's case." *Id.; United States v. Russell*, 717 F.2d 518, 520 (11th Cir.1983) ("extrinsic evidence which contradicts the *material* testimony of a prior witness is admissible") (emphasis in original); *United States v. Opager*, 589 F.2d 799, 801–02 (5th Cir.1979) ("We consider Rule 608(b) to be inapplicable in determining the admissibility of relevant evidence introduced to con-

tradict a witness's testimony as to a material issue."). Therefore, although extrinsic evidence of prior drug use could not properly be used just to attack Cousins' credibility, such evidence could be used to refute specifics to which Cousins had previously testified.

■ On direct examination, Cousins' testimony went beyond merely denying complicity in the smuggling conspiracy. Indeed, Cousins made sweeping assertions that he was strongly opposed to drugs and had moved his family from south Florida because of what he perceived as a permissive attitude towards illegal drugs. These assertions represented to the jury that Cousins could not have conspired to import cocaine because he abhorred drug use. Because the government must show beyond a reasonable doubt that Cousins knowingly and willfully became a member of the conspiracy, *see generally United States v. Sanchez*, 722 F.2d 1501 (11th Cir.1984), Cousins' anti-drug statements provided the jury with a basis upon which to acquit him of the conspiracy charge. *See generally* Pattern Jury Instructions (Criminal Cases), Eleventh Circuit, Special Instruction No. 8–Character Evidence (1985 ed.).[7] Thus, Cousins made his true attitude toward illegal drugs a material issue. The government's extrinsic evidence was introduced to disprove Cousins' self-serving testimony that he was staunchly opposed to drugs. Although the rebuttal testimony tended to impeach Cousins' veracity, it also contradicted Cousins' testimony about his anti-drug view which, if believed by the jury, may have led to his acquittal. Under these circumstances, Cousins' attitude-on-drugs testimony was material; and the district court properly admitted extrinsic evidence to prove its falsity.

---

7. This instruction provides:

   Evidence has been offered of a Defendant's good character, and *such evidence may give rise to a reasonable doubt.*

   So, where a Defendant has offered testimony that he is an honest and law-abiding citizen, the jury should consider that testimony, along with all the other evidence, in deciding whether the Government has proved beyond a

reasonable doubt that the Defendant willfully committed the crime charged.

*Pattern Jury Instructions* (Criminal Cases), Eleventh Circuit, Special Instruction No. 8—Character Evidence (1985 ed.) (emphasis added). This instruction was given to the jury and we believe it demonstrates the materiality of Cousins' statements.

Extrinsic evidence is permitted to contradict a defendant's or witness' testimony as to a material issue in a case because:

> the ultimate purpose of the rules of evidence should not be lost by a rigid, blind application of a single rule of evidence. Individual rules of evidence, in this instance Rule 608(b), should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence which Rule 608(b) seeks to exclude.

. . . .

> By admitting the rebuttal evidence, the trial court merely completed the picture as to appellant's true involvement and knowledge in the drug world and thereby corrected a disturbed view of the appellant's testimony.

*United States v. Opager,* 589 F.2d 799, 802 (5th Cir.1979) (quoting *United States v. Batts,* 558 F.2d 513, 517, 518 (9th Cir. 1977)); *accord United States v. Calle,* 822 F.2d 1016 (11th Cir.1987); *United States v. Greschner,* 802 F.2d 373, 383 (10th Cir. 1986); *see also United States v. Gonzalez,* 491 F.2d 1202, 1204 (5th Cir.1974) (case decided prior to adoption of the Federal Rules of Evidence); *Jackson v. United States,* 311 F.2d 686, 689–90 (5th Cir.1963) (same).

In sum, we conclude that the district court did not err; it neither abused its discretion in denying Cousins' motion for a mistrial nor improperly admitted rebuttal testimony to refute Cousins' material assertions. Accordingly, the judgment of the district court is AFFIRMED.