[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14299
Non-Argument Calendar

_____

D. C. Docket No. 04-00449-CR-2-SLB-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JANARIS SHAVAR CUNNINGHAM,
a.k.a. Twin,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 15, 2006)

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Janaris Shaver Cunningham appeals his convictions for carjacking, in violation of 18 U.S.C. § 2119, and brandishing and discharging a firearm during a carjacking, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii)-(iii). Cunningham claims the district court erred in not finding him incompetent when he did not receive his psychotropic medication for half a day during trial and in not declaring a mistrial after a courtroom outburst. He further asserts there was insufficient evidence to convict him on the first count of carjacking. We affirm Cunningham's convictions.

## I. DISCUSSION

### A. *Competency*

Cunningham asserts the prison's failure to give him his psychotropic medication for half of a day during trial caused severe behavioral problems, and thus, rendered him incompetent to stand trial. He asserts due process violations because he was convicted as an incompetent and without an adequate competency evaluation. Cunningham emphasizes his need for the medication and states the district court should have postponed the trial in order to allow him to stabilize.

While Cunningham moved for a mistrial on the morning when he did not receive his medication, his motion was based only on the district court's decision to exclude him from the courtroom if he was unwilling to wear the stun belt that

2

had been required for security reasons. Accordingly, Cunningham did not raise before the district court the issue of whether the accidental failure to give him his medication rendered him incompetent.

Typically, we review issues raised for the first time on appeal for plain error.[1] *United States v. Olano*, 113 S. Ct. 1770, 1776-79 (1993). In the context of 28 U.S.C. § 2255 motions, however, we have stated that a substantive claim of incompetence to stand trial may not be waived or procedurally defaulted. *See Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005). The normal standard of review of a competency determination is for clear error. *United States v. Hogan*, 986 F.2d 1364, 1371 (11th Cir. 1993). We need not decide the standard of review here, however, because under either standard of review, Cunningham's claim fails.

A defendant is mentally incompetent to stand trial when he is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). A district

---

[1] Under this standard of review, there must be error, that is plain, and that affects substantial rights. *United States v. Mitchell*, 146 F.3d 1338, 1342 (11th Cir. 1998). If these three criteria are met, then we may exercise our discretion to reverse the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1343.

court must conduct a competency hearing where there is a *bona fide* doubt about a criminal defendant's competence. *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005), *cert. denied*, No. 05-9844 (U.S. April 17, 2006). This is an ongoing inquiry, as "the defendant must be competent at all stages of trial." *Id*.

Before trial, Cunningham was given a mental competency evaluation. A psychologist addressed whether Cunningham understood the charges against him, the potential consequences thereof, the trial process, and whether he was capable of assisting in his defense, and determined that he did understand and could assist. Cunningham's behavior problems were noted and attributed to withdrawal from various substances and to a "characterological disorder." The psychologist, however, recommended a finding of competency, and this recommendation was not contingent on the administration of medication.

This pre-trial competency finding is not challenged. Instead, Cunningham claims he later was rendered incompetent when he was not given his medication one morning during trial. Nothing in the record supports this contention. There is no dispute that, on the morning in question, Cunningham caused significant, and sometimes violent, disturbances in his holding cell. However, given that the original, unchallenged competency determination was not contingent on whether Cunningham received medication, it is difficult to see how the failure to

4

administer medication one morning could have rendered him incompetent. In fact, the district court, as part of its efforts to ensure that Cunningham's rights were fully protected during the trial, discussed this matter with medical staff at the prison, and was informed that missing one dose of medication would not cause the conduct in which Cunningham engaged that morning. Further, as a result of Cunningham's behavior, no trial activities took place that morning. By the time the trial resumed that afternoon, the missed dose of medication had been administered, and thus, even if Cunningham had been rendered incompetent by the missed dose, this condition would have been corrected. Not only was Cunningham not rendered incompetent by his missed dose of medication, his actions that morning did not raise a *bona fide* doubt as to his competency. Accordingly, the district court neither clearly nor plainly erred by not finding Cunningham incompetent.

B. *Mistrial*

Cunningham next contends the district court abused its discretion by not declaring a mistrial after the jury was exposed to extraneous information. The outside influences on which Cunningham relies are his courtroom outburst, which caused security staff to activate the stun belt that Cunningham was wearing and

5

then "tackle" him to the floor, and the district court's subsequent explanation that trial delays had been caused by Cunningham's behavior.

We review a decision not to declare a mistrial based on an allegation that the jury has been unfairly prejudiced for an abuse of discretion. *United States v. Cousins*, 842 F.2d 1245, 1247 (11th Cir. 1988). It is possible for the security measures taken by a trial court to be sufficiently unfairly prejudicial to a criminal defendant as to cause a due process violation. *See Holbrook v. Flynn*, 106 S. Ct. 1340 (1986) (habeas context). Although we have not directly stated a defendant may not require a mistrial through his own misconduct, it is well-established that a defendant generally may not benefit through his own misconduct, *see, e.g.*, *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (holding a defendant waived his Sixth Amendment right to cross-examine a witness when he killed the witness), and other circuits have so held, *see United States v. McCormac*, 309 F.3d 623, 626-27 (9th Cir. 2002) (holding the defendant was not entitled to a mistrial after she argued with the trial judge and was held in contempt); *United States v. Stewart*, 256 F.3d 231, 242 (4th Cir. 2001) (holding a defendant could not require a mistrial by pretending to shoot the jury); *United States v. Harris*, 2 F.3d 1452, 1454, 1456 (7th Cir. 1993) (holding the defendant could not receive a mistrial and

profit from his misconduct, which consisted of standing on a table and yelling at potential jurors).

There is no indication the jury was prejudiced by Cunningham's outburst, or by the subsequent security measures taken to subdue him. The district court twice polled the jurors regarding whether the outburst had affected their ability to consider the case fairly and impartially. None of the jurors indicated that it had. Further, the incident in question was caused by Cunningham. Even if the jurors were prejudiced by Cunningham's outburst, the security response to that outburst, and the district court's explanation that trial delays were caused by Cunningham, he may not require a mistrial through his own misconduct. *See Rouco*, 765 F.2d at 995. Since the district court determined the jury had not been prejudiced by Cunningham's outburst, and Cunningham may not profit through his own misconduct, the district court did not abuse it discretion by denying Cunningham's request for a mistrial.

C. *Insufficient Evidence*

Finally, Cunningham asserts there was insufficient evidence to convict him of the carjacking of Jonathan Brooks. He asserts the evidence did not show an intent to cause death or serious bodily harm because he did not demand Brooks' car, but rather, Brooks offered it to Cunningham as a "peace offering."

We review "*de novo* a defendant's claim that the evidence was insufficient to convict him, viewing the evidence and all reasonable inferences and credibility choices in the light most favorable to the government." *United States v. Anderson*, 289 F.3d 1321, 1325 (11th Cir. 2002). To successfully convict a defendant of carjacking, the government must establish the defendant, "with the intent to cause death or serious bodily harm, [took] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempt[ed] to do so." 18 U.S.C. § 2119. The intent element of this offense is satisfied when, "at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *United States v. Fulford*, 267 F.3d 1241, 1244 (11th Cir. 2001) (quotations and citations omitted).

Here, Cunningham held Brooks at gunpoint and demanded drugs and money, of which Brooks had neither. Brooks was told that, if he moved, he would be killed. After Cunningham's accomplice picked up Brooks' car keys and asked about the vehicle, Brooks–who did not want to be shot–told them they could take the car. Cunningham then forced Brooks to go out to the car and threatened he would kill Brooks if Brooks tried anything. After an aborted attempt to force

8

Brooks into the car, Cunningham and his accomplice then departed in Brooks'

vehicle. This series of events supports the jury's finding that Cunningham

fulfilled the intent requirement of § 2119. It is of no matter that Cunningham did

not specifically demand the car from Brooks. Pointing a gun at someone,

threatening to kill him, taking his keys, continuing to point the gun at him, and

then threatening to kill him again is sufficient to allow a reasonable jury to

conclude that, at the time of the offense, Cunningham intended to inflict death or

serious bodily harm on Brooks if necessary to steal the car. *See United States v.*

*Diaz*, 248 F.3d 1065, 1096-98 (11th Cir. 2001) (holding there was sufficient

evidence of intent for carjacking where the defendants took victims' cars as part of

a kidnaping and extortion plot, and resistance on the part of the victims exposed

them to more harm).

## II. CONCLUSION

The district court did not err in finding Cunningham competent for trial and

did not abuse its discretion in failing to grant a mistrial. Additionally, sufficient

evidence supports the jury's verdict of carjacking. We affirm Cunningham's

convictions.

AFFIRMED.