[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12801
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:09-cr-00441-RDP-RRA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALPHONSO BRONTAY BENFORD,
a.k.a. Alphonso Brontay Harris,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 26, 2011)

Before BARKETT, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Alphonso Brontay Benford appeals his convictions and sentences for two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Benford argues: (1) that the district court erred in admitting character evidence in violation of Federal Rules of Evidence 404(b) and 403; (2) that the district court erred in admitting hearsay evidence, and that this evidence violated his rights under the Confrontation Clause; (3) that the jury's finding that Benford unlawfully possessed the firearm discovered in his vehicle was not supported by sufficient evidence; (4) that the government's failure to provide a witnesses's testimony from a previous trial violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) and the Jencks Act, 18 U.S.C. § 3500; (5) that the cumulative effect of these errors denied Benford a fair trial; and (6) that the district court erred in applying a two-level obstruction of justice enhancement under United States Sentencing Guidelines § 3C1.1 (Nov. 2009) and a four-level enhancement for possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6). After careful review of the record and the parties' briefs, we affirm Benford's convictions and sentences.

I.

Benford argues that the district court erred in admitting impermissible character evidence in violation of Rules 404(b) and 403. Specifically, he contends

2

that the district court abused its discretion in admitting (1) evidence of three Spring 2008 drug transactions, (2) MySpace photos showing Benford holding firearms, (3) a witness's testimony that Benford previously purchased cocaine from him, and (4) a variety of other evidence that Benford contends was unduly prejudicial.  We consider each in turn.

A.

First, Benford challenges the admission of testimony about three controlled drug buys in Spring 2008.  Normally, "[w]e review evidentiary rulings of the district court for an abuse of discretion."  United States v. Hoffman-Vaile, 568 F.3d 1335, 1340 (11th Cir. 2009).  "[B]ut when a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only."  Id. (quotation marks omitted).  Although Benford objected to this evidence in his pre-trial motion in limine, he failed to renew his objection when the evidence was presented at trial.[1]  Because "the overruling of a motion in limine does not suffice" to preserve an objection on appeal, we review the admission of this evidence only for plain error.  United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990).  "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3)

---

[1]  Benford did object to some of this testimony on hearsay grounds.  That issue is considered in Part II below.

3

affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." Hoffman-Vaile, 568 F.3d at 1340 (quotation marks omitted). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

Generally, Rule 404(b) "prohibits evidence of offenses or illegal acts extrinsic to a defendant's indictment to show the defendant's bad character."[2] United States v. Costa, 691 F.2d 1358, 1361 (11th Cir. 1982). We apply a three-part test to determine whether extrinsic evidence of prior bad acts is admissible under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; [and] Third, the probative value of the evidence must not be substantially

---

[2] Specifically, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

4

> outweighed by its undue prejudice, and the evidence must
> meet the other requirements of Rule 403.

United States v. Matthews, 431 F.3d 1296, 1311–12 (11th Cir. 2005).

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Although the district court has a great degree of discretion in weighing probative value and prejudice under Rule 403, "we have also recognized that Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance . . . should be struck in favor of admissibility." United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (quotation marks omitted). The risk of undue prejudice can be reduced by a district court's limiting instruction. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005).

In this case, the district court admitted evidence of three controlled drug transactions in March and April of 2008, in which Benford sold cocaine to a confidential informant. The court instructed the jury that this evidence could only be used for the purpose of determining whether Benford knowingly possessed the

firearms that were discovered upon his arrest in August 2008.[3]  In United States v. Thomas, 242 F.3d 1028 (11th Cir. 2001), this Court held that evidence of drug dealing is relevant to proving that a defendant knowingly possessed weapons, so long as "the evidence of . . . drug trafficking [i]s in sufficiently close proximity, temporally and physically," to the facts supporting the weapons charge.  Id. at 1032.  While we did not elaborate on what was "sufficiently close proximity, temporally and physically," we explained that even though

> no drugs were found during the July 17 search of his residence during which the weapons were found. . . . [t]he fact that Thomas was engaged in selling crack from his home [on June 29 and July 8 was] relevant evidence from which to infer that he knowingly possessed rifles found in the closet of that home and in his truck parked in the driveway of that home.

Id.

As in Thomas, no cocaine was found during the searches that resulted in the weapons charges in this case.[4]  Also as in Thomas, this evidence was admitted subject to a limiting instruction that it was to be used only for determining whether

---

[3]  Specifically, the district court instructed the jury not to "consider any of this evidence in deciding if [Benford] possessed a weapon unlawfully in this case," but stated: "[i]f you find beyond a reasonable doubt that the defendant did possess[] a weapon, then you may consider the evidence of these other bad acts . . . in determining whether or not he knowingly possessed the weapon."

[4]  Several Ecstasy pills were found in Benford's bedroom and marijuana was found in another bedroom during the search of Benford's home following his arrest.

Benford knowingly possessed the weapons. Id. at 1033. Nevertheless, Benford argues that his case is distinguishable from Thomas, because the drug transactions took place months before and at different locations than the events giving rise to the weapons charges. But because we review this issue only for plain error, we need not decide whether the evidence of narcotics sales in this case was in "sufficiently close proximity, temporally and physically," to come within the scope of Thomas's holding. 242 F.3d at 1032. Instead, we simply hold that on these facts, and in light of Thomas, the district court did not plainly err in admitting the evidence of the earlier controlled drug buys as intrinsic evidence of Benford's knowing possession.

B.

Second, Benford challenges the admission of two photographs taken from his MySpace page, which showed him posing with two of the pistols charged in the indictment. The district court denied Benford's motion in limine to exclude the images, but directed the government to redact a prejudicial caption presented with Exhibit 15. The other image, Exhibit 17, was admitted into evidence with the caption: "Strapped in the streets and in the booth, bitches." At trial, Benford objected to the admission of Exhibit 17, but not Exhibit 15. We therefore review

7

the admission of Exhibit 17 for abuse of discretion, but review the admission of Exhibit 15 only for plain error.  See Hoffman-Vaile, 568 F.3d at 1340.

Benford argues that the photos and captions were extrinsic evidence that "did nothing other than represent [him] as a gangster and criminal," and therefore ought to have been excluded under Rules 404(b) and 403.  Benford relies on United States v. Phaknikone, 605 F.3d 1099 (11th Cir. 2010), in which this Court concluded that "the district court abused its discretion by admitting the profile page, subscriber report, and photographs from the MySpace.com account of [the defendant] to prove that he committed a string of bank robberies 'like a gangster.'"  Id. at 1101, 1109.  But unlike in Phaknikone, the photographs here did not simply show Benford acting "like a gangster."  Instead, they specifically showed Benford holding two of the pistols charged in the indictment.  At trial, the government elicited testimony from an ATF special agent that one of the pistols displayed in Exhibit 15 had markings identifying it as a tenth anniversary gold-plated Lorcin pistol, the same type found in a safe in Benford's residence.  The agent testified that the guns in Exhibit 17 also had markings consistent with those Lorcin pistols.[5]  Thus, unlike in Phaknikone, the photographs were not extrinsic evidence.  See 605

_____

    [5] Indeed, later in the trial, Benford admitted that the guns in the photographs were the same ones recovered from his home.

8

F.3d at 1107–08.  Instead, this evidence was directly probative of Benford's

knowing possession of the very weapons charged in the indictment.  Because this

was intrinsic evidence, it was not subject to the limitations of Rule 404(b).  See

United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992) ("[B]ecause the

evidence is intrinsic, not extrinsic, we do not engage in a Rule 404(b) analysis.").

We also note that the ATF special agent testified that the term "strapped" in

the caption to the photograph in Exhibit 17 meant "carrying a firearm."  As such,

while this caption may have been prejudicial, we cannot say that the district court

abused its discretion in concluding that any prejudice did not substantially

outweigh its probative value.  For these reasons, we conclude that the district court

did not err in admitting these exhibits.

C.

Benford next takes issue with the district court's admission, over objection,

of Tagget Williams's testimony that he regularly sold large quantities of cocaine to

Benford in Atlanta from 2004 to 2007.  The district court had initially excluded

this testimony from the government's case-in-chief when ruling on Benford's

motion in limine, but later allowed the government to present the testimony in its

rebuttal case after Benford denied having ever dealt drugs or having ever

purchased drugs from Williams.

9

"The determination of what is admissible on rebuttal is primarily for the discretion of the trial courts, and the appellate courts will not reverse in the absence of an abuse of discretion." United States v. Plotke, 725 F.2d 1303, 1309 (11th Cir. 1984) (quotation marks omitted). But Federal Rule of Evidence 608(b) "provides, in part, that specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence." United States v. Cousins, 842 F.2d 1245, 1249 (11th Cir. 1988) (quotation marks omitted). "This rule prohibits a party from introducing extrinsic evidence of specific instances of misconduct in order to impeach the general credibility of a witness." Id. But "evidence may be admitted to prove or disprove material facts in a case, even though a previous witness has testified to the contrary." Id.

The government appears to argue that the testimony was material because Benford's prior drug dealing is probative of his knowing possession of a firearm. See Thomas, 242 F.3d at 1032–33 & n.7. We disagree. In Thomas, the drug sales took place less than a month before the weapons were found and at the same residence in which those weapons were found. Id. at 1030. Here, the testimony concerned drug purchases that took place years earlier than the events giving rise to the weapons charge, and in a different state. We conclude that this evidence

10

was not relevant to proving that Benford knowingly possessed the weapons.
See id. at 1032 (requiring "that the evidence of . . . drug trafficking [be] in
sufficiently close proximity, temporally and physically" to the factual basis of the
weapons charge). Because Williams's testimony was not relevant to any material
issue other than Benford's credibility, the district court abused its discretion by
permitting this extrinsic evidence of specific instances of misconduct. See Fed. R.
Evid. 608(b).

Although we conclude that the district court erred in admitting Williams's
testimony, we must still consider whether that error was harmless. See
Phaknikone, 605 F.3d at 1109. We do so in Part IV, after first addressing
Benford's other challenges to his convictions.[6]

D.

Benford also claims that the district court erred in admitting a variety of
other evidence that was unduly prejudicial. Specifically, Benford challenges (1)
evidence suggesting his infidelity, (2) evidence that one firearm was stolen, (3)
evidence about the common practice of drug dealers, and (4) testimony that a

---

[6] As we have now concluded that it was error to admit Williams's testimony in the first
place, we need not address Benford's further argument that the government's failure to provide
Williams's testimony from a previous trial violated Brady, 373 U.S. 83, 83 S. Ct. 1194, and the
Jencks Act, 18 U.S.C. § 3500, by impeding his ability to impeach or rebut Williams's testimony.

11

package containing $100,000 smelled like cocaine and was wrapped in a manner consistent with cocaine packaging.

## 1.

Benford did not object to any testimony regarding infidelity or his sexual conduct, and therefore we review only for plain error. See Hoffman-Vaile, 568 F.3d at 1340. The government responds that this evidence was inextricably intertwined with the evidence of the charged offenses. We agree. Benford's defense was that the weapons in the house belonged to his mother or to women with whom he had intimate relationships. The nature of those relationships was therefore relevant to the jury's understanding of how and why the weapons were inside Benford's home. To the extent that the evidence of Benford's various intimate relationships might still have been prejudicial, we note that Benford himself relied on these relationships to explain why he did not possess the weapons found in the home.[7] We conclude that the district court did not commit plain error in admitting this evidence.

## 2.

---

[7] Specifically, Benford explained that the guns were "all for when my wives or ex-wife or ex-girlfriends or whoever come over there. Just like when the jurors go sit in their seats, they read their tablets, that's their tablet. But at some point they're going to come back to it. So at some point, I know they stay in rotation all the time; they are going to come back over my house."

Next, Benford challenges the government's questioning on cross-examination about a stolen firearm. On cross-examination, the government asked Benford if he would be surprised to know that a particular firearm found in his home was stolen. Benford objected that the question assumed a fact not in evidence—that is, that the firearm was in fact stolen. At sidebar, the government provided the name of the individual who was claiming the gun was stolen, and the district court permitted the line of questioning on the assumption that the government would later introduce evidence that the gun was stolen. But, as the government concedes, that evidence was not offered until the sentencing hearing. Nevertheless the government argues that because Benford did not request a curative instruction, the district court did not plainly err in failing to give one sua sponte. We agree. "[T]he decision not to give a curative instruction was well within the district court's discretion" in this instance. United States v. Emmanuel, 565 F.3d 1324, 1335 (11th Cir. 2009) (finding no abuse of discretion in district court's failure to issue sua sponte a curative instruction to a witness's stray prejudicial remark when "the comment was but a brief reference . . . and a curative instruction could have drawn unwarranted attention to the comment" (quotation marks omitted)).

3.

Next, Benford challenges statements officers made about the typical conduct of drug dealers. Specifically, Benford challenges: (1) Officer Terry Lucas's testimony about the high rate of turnover of drug proceeds; (2) Officer Henry Anderson's testimony that drug dealers often try to keep the locations where money or drugs are stored a secret from their competition; and (3) Officer Anderson's testimony that drug dealers usually have firearms.

First, with respect to Officer Lucas's testimony, Benford objected on the basis of hearsay and relevance.[8] Because Benford did not object to Officer Lucas's testimony about the turnover rate of drug proceeds on prejudice grounds, we review that issue only for plain error. See Hoffman-Vaile, 568 F.3d at 1340. In light of the limiting instruction given by the district court, we cannot say that the district court plainly erred in admitting this testimony. See Ramirez, 426 F.3d at 1354.

Second, Benford objected to Officer Anderson's testimony about the amount of traffic at drug dealers' residences as inadmissible opinion evidence. The district court overruled the objection, and allowed the testimony as lay witness opinion under Rule 701. Given that Officer Anderson's testimony was based on his perceptions and observations as a police officer, and was helpful to

---

[8] That objection is considered below in Part II.

14

the jury in understanding the significance of the low-level of traffic that Officer Anderson observed at Benford's residence before his arrest, we cannot say that the district court abused its discretion in allowing this lay opinion testimony. See United States v. LeCroy, 441 F.3d 914, 927 (11th Cir. 2006).

Third, Benford objected to Officer Anderson's testimony that drug dealers usually carry weapons on hearsay grounds. Because Benford failed to object on the basis of relevance or prejudice, and does not renew his hearsay challenge to this testimony on appeal, we review only for plain error. See Hoffman-Vaile, 568 F.3d at 1340. We conclude that the district court did not plainly err in admitting this testimony, because it was relevant to the government's theory that Benford, as a drug dealer, knowingly possessed the charged weapons, and it was sufficiently based on Officer Anderson's perceptions and observations as a police officer to be proper lay witness opinion under Rule 701.

4.

Benford similarly challenges (1) Officer Lucas's testimony that the $100,000 found in a vehicle in the garage smelled like cocaine, and (2) Officer Chaff Shannon's testimony that the bundle was wrapped like a kilogram of cocaine would be wrapped and smelled like cocaine.

15

Initially, we note that Benford failed to object to all of these statements, and we therefore review only for plain error. See Hoffman-Vaile, 568 F.3d at 1340. We cannot say that the district court plainly erred in admitting the two officers' testimony that the package smelled like cocaine, because this testimony was clearly based on the officers first-hand perception. See Fed. R. Evid. 701. We likewise conclude that it was not plain error to admit Officer Shannon's testimony that the bundle was wrapped like a kilogram of cocaine for the same reason. Id. This testimony was based on Officer Shannon's perceptions and observations as a police officer.

## II.

Benford next argues that the district court erred in admitting Officer Lucas's hearsay testimony about the Spring 2008 drug transactions. Specifically, Benford takes issue with Officer Lucas's testimony that (1) the confidential informant told him that Benford was selling drugs and that the informant had placed phone calls to Benford during a drug deal; (2) there is a high turnover rate for drug proceeds; (3) the informant worked at an adult bookstore; and (4) other officers followed Benford to a particular location after one of the controlled drug transactions.

Initially, we note that Benford did not object to the last two categories of statements, and therefore we review their admission only for plain error. See

16

Hoffman-Vaile, 568 F.3d at 1340. To establish plain error, Benford must show that the asserted error affected his substantial rights. United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010). "For an error to affect substantial rights, it generally must have been prejudicial: It must have affected the outcome of the district court proceedings." Id. (quotation marks omitted). Benford has not shown that the testimony that the informant worked at an adult bookstore or that other law enforcement agents followed Benford to a particular address affected the outcome of his trial. We therefore conclude that it was not plain error to admit this testimony.

The district court admitted the other testimony over objection, subject to a limiting instruction that the jury was only to "consider this evidence . . . for what effect it would have on [Officer Lucas] in terms of what actions he took in light of this." We have held that

> [s]tatements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.

United States v. Baker, 432 F.3d 1189, 1208 n.17 (11th Cir. 2005).

17

Officer Lucas's testimony that the confidential informant told him that Benford was selling drugs was relevant to explain Officer Lucas's subsequent investigatory actions in setting up the three controlled drug buys that ultimately resulted in the search that produced the weapons Benford is charged with possessing in this case. Similarly, the testimony that the informant placed calls to Benford during the first controlled drug buy was relevant to explaining Officer Lucas's conduct in monitoring the drug buys, because the location of that purchase changed following the phone calls. Because these statements explained Officer Lucas's subsequent investigatory conduct, the district court was within its discretion to conclude that the evidence was admissible for non-hearsay purposes. See Baker, 432 F.3d at 1208 n.17.

We also conclude that the district court did not abuse its discretion in admitting Officer Lucas's testimony on re-direct that, based on his experience and conversations with drug dealers, there is a high turnover rate for drug proceeds. On cross-examination, Officer Lucas admitted that the marked bills given to the informant for the controlled drug purchases in March and April of 2008 were not found during the search of Benford's residence following his arrest in August 2008. The district court allowed Officer Lucas to testify about why he would not necessarily have expected to find the drug proceeds at Benford's residence several

18

months after the controlled drug buys.  As this evidence was relevant to explaining Officer Lucas's actions in marking the bills given to informant, the district court did not abuse its discretion in admitting the testimony over Benford's hearsay objection.  See Baker, 432 F.3d at 1208 n.17.  Moreover, the district court was careful to instruct the jury once again that the testimony was only to be used to explain "why [Officer Lucas] did what he did."  This limiting instruction reduced the risk of any undue prejudice.  See Ramirez, 426 F.3d at 1354.  We conclude that the district court did not err in admitting any of Officer Lucas's testimony over Benford's hearsay objections.

Benford also contends that admission of the hearsay evidence violated his rights under the Confrontation Clause.  While we review a district court's evidentiary rulings for abuse of discretion, see Hoffman-Vaile, 568 F.3d at 1340, we normally review de novo questions of constitutional law, United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004).  But as Benford only objected to the testimony on hearsay grounds, we review this issue for plain error.  United States v. Chau, 426 F.3d 1318, 1321–22 (11th Cir. 2005) (explaining that a hearsay objection is insufficient to preserve an objection that evidence is being admitted in violation of the Confrontation Clause).  We find no error, plain or otherwise, because we have concluded that these statements were not hearsay, and therefore

their introduction at trial did not violate Benford's Confrontation Clause rights. United States v. Jiminez, 564 F.3d 1280, 1286 (11th Cir. 2009) ("There can be no doubt that the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay.").

## III.

Benford argues that the district court erred in denying his motions for judgment of acquittal on Count One at the end of the government's case-in-chief and at the close of all the evidence, because the evidence introduced at trial was insufficient to support his conviction for possessing a firearm discovered in the vehicle he was driving when arrested. "We review de novo whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009). "Accordingly, the evidence will be sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Id. (quotation marks omitted).

"Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).

20

"To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." Beckles, 565 F.3d at 841 (quotation marks omitted). Here, Benford challenges only the second element, and argues that he did not knowingly possess the firearm in the truck.

"The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence." Id. (quotation marks omitted). "In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself . . . or the vehicle in which contraband is concealed." Wright, 392 F.3d at 1273 (quotation marks omitted). But "a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." Beckles, 565 F.3d at 841 (quotation marks omitted).

Here, the evidence in the government's case-in-chief, viewed in the light most favorable to the government, would allow a reasonable jury to conclude that Benford constructively possessed the firearm. Officer Lucas testified that as he approached the truck, with Benford still in the driver's seat, he "observed

21

[Benford] leaning towards the driver's side door with his shoulder down." Officer Eddie McDaniel likewise testified that he observed Benford "moving around a little bit in the seat once he was stopped." Officer McDaniel testified that as Benford got out of the truck, he observed a firearm in the driver's side door. Officer McDaniel further testified that the firearm was visible and readily accessible from the driver's seat, as it was "sticking straight up" in the door pocket. These facts are sufficient to establish that Benford knew of the existence of the weapon. As such, a jury could reasonably find that Benford had at least constructive possession of the firearm by virtue of his ability to take actual possession of it and his control over the car in which it was located. See Wright, 392 F.3d at 1273–74 (holding that a defendant had constructive possession of a firearm that was in a car he owned and was driving); cf. United States v. Pedro, 999 F.2d 497, 502 (11th Cir. 1993) (concluding that evidence was insufficient where the "record [was] devoid of any evidence of [the defendant's] knowledge of the firearm carried by [his partner in a joint burglary]"). We therefore conclude that the evidence is sufficient to support Benford's conviction on Count One.

IV.

Having found one error with respect to Benford's convictions—the admission of Williams's testimony concerning drug transactions in Atlanta from

22

2003 to 2007—we now consider whether that error was harmless.[9] "The government bears the burden of establishing that an error is harmless." Phaknikone, 605 F.3d at 1109. "Reversal is warranted only if [the error] resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." Id. (quotation marks omitted) (alterations in original). "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." Id. (quotation marks omitted). In deciding whether an error is harmless, we review the entire record. Id.

In this case, our review of the entire record reveals strong evidence as to both counts. With respect to Count One, as discussed above in Part III, the evidence shows Benford driving a truck where a charged firearm was readily accessible and visible from the driver's seat. With respect to Count Two, which involved the seven firearms found inside the residence, the evidence is overwhelming. For example, in addition to the MySpace photographs showing Benford holding the two Lorcin pistols found in a safe, there was also evidence that many of the guns were near or mingled with Benford's personal items. One

---

[9] Benford also argues that, even if we find that some of the district court's errors were harmless, the cumulative effect of those errors violated his constitutional rights and requires a reversal of his conviction. But because we have identified only a single error, there can be no cumulative error. See United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

23

was found under his mattress. Another was in a night stand, lying on top of a wallet. There was one on a shelf in the bedroom. Yet another was found on top of a china cabinet. Another was on top of a dresser.

Moreover, as we explained above, Williams's testimony was not relevant to showing Benford's knowing possession of the weapon because the drug transactions Williams testified to were not "in sufficiently close proximity, temporally and physically" to the facts supporting the weapons charges. Thomas, 242 F.3d at 1032. As this testimony was of no probative value to a material issue in the case, and given the other evidence of Benford's guilt on both counts, we do not believe Williams's testimony "had substantial and injurious effect or influence in determining the jury's verdict." Phaknikone, 605 F.3d at 1109. We recognize that this evidence was probative of Benford's general credibility, and prejudicial insofar as it depicted his extrinsic criminal acts. But the jury was already presented with ample evidence that Benford was a drug dealer, despite his testimony to the contrary, through Officer Lucas's description of the controlled drug buys. As such, Williams's testimony was largely cumulative on these points, and therefore was unlikely to significantly influence the jury. For all these reasons, we conclude that while the district court erred in admitting Williams's testimony, this error was harmless.

V.

Benford next argues that his sentences were unreasonable because the district court erred in applying two enhancements to his guidelines calculation. First, Benford contends that his trial testimony did not warrant a two-level increase for perjury or obstruction of justice under U.S.S.G. § 3C1.1. Second, Benford argues that the district court erred in applying a four-level increase under U.S.S.G. § 2K2.1(b)(6) for possessing a firearm in connection with another felony offense. We consider each in turn.

A.

When considering an obstruction of justice enhancement under § 3C1.1, we "review the district court's findings of fact for clear error and the application of the Guidelines to those facts de novo." United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted).

An obstruction of justice enhancement is appropriate if "the defendant willfully obstructed . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."

U.S.S.G. § 3C1.1. Obstructive conduct includes the commission of perjury. Id. at cmt. n.4(B). Perjury occurs when a witness, testifying under oath, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993). Material matters include those that "would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6. "[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice . . . ." Dunnigan, 507 U.S. at 95, 113 S. Ct. at 1117. Because "[a]n appellate court is not in a position to assess a defendant's demeanor, apparent sincerity, intonation, expression, gesticulations, and a wide range of other considerations that are pertinent in determining whether he has perjured himself," we have explained that "it is not only appropriate, but necessary, for us to accord special deference to the district court rulings under . . . § 3C1.1 when matters such as perjury are at issue." United States v. Williams, 340 F.3d 1231, 1240–41 (11th Cir. 2003).

Here, after listening to the parties' arguments and presiding over the trial, the district court found that Benford offered perjured testimony during the trial.

Specifically, the district court believed that Benford had lied about (1) not knowing the combination to the safe containing the Lorcin pistols and (2) why the various guns recovered from his residence were located in different places throughout the house. This testimony was material because it directly related to whether Benford knowingly possessed the firearms. Benford argues that he merely exercised his right to testify on his own behalf, but the right to testify does not include a right to commit perjury. See Dunnigan, 507 U.S. at 96, 113 S. Ct. at 1117. We conclude that the district court did not clearly err in finding the two-level obstruction of justice enhancement applicable in this case.

B.

Under the Sentencing Guidelines, a four-level increase is applied if a felon possesses a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). "In connection with" is defined by the guidelines to mean the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). "Another felony offense" is "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. at cmt. n.14(C). Under Alabama law, possession of a controlled substance is a Class C felony offense punishable by up to ten years imprisonment. See Ala.

27

Code §§ 13A-5-6, 13A-12-212. We review the district court's determination that a defendant used a firearm "in connection with" another felony offense for clear error. United States v. Whitfield, 50 F.3d 947, 949 n.8 (11th Cir. 1995) (involving the substantively identical U.S.S.G. § 2K2.1(b)(5) (1994)).

At sentencing, the government elicited testimony that officers recovered Ecstasy tablets, approximately $100,000, and three loaded firearms—one in the night stand, one under the mattress, and one on a shelf—in the master bedroom of Benford's residence. Marijuana was found in another bedroom, in which the safe containing the two Lorcin pistols was also found. Officer Lucas testified, based on his training and experience, that defendants involved in drug felonies would use firearms for protection, and that he believed that the multiple guns were laid out in the home where anybody inside the home would have quick access to a firearm. In applying the enhancement, the district court found by a preponderance of the evidence that the $100,000 was drug proceeds. Given the evidence at trial, including testimony that another bundle of $100,000 in cash found on the property had been wrapped in a package that "had the strong odor of cocaine," we cannot say that this finding was clearly erroneous. As Benford's firearm possession was in close proximity to drugs and drug proceeds, the district court did not clearly err in determining that Benford used a firearm in connection with another felony

28

offense.  <u>See</u> § 2K2.1 cmt. n.14(B) (explaining that the enhancement is applicable "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia[,] . . . because the presence of the firearm has the potential of facilitating another felony offense").

## VI.

For all of these reasons, we conclude that the district court committed no reversible error, and we therefore affirm Benford's convictions and sentences.

**AFFIRMED.**